[Civ. No. 18721. Second Dist., Div. Two. Dec. 7, 1951.]

CITY OF GLENDALE, Petitioner, v. GLENN E. CHAPMAN, as City Clerk, etc., et al., Respondents.

Henry McClernan, City Attorney, John H. Lauten, Assistant City Attorney, O'Melveny & Myers and James L. Beebe for Petitioner.

Stephen B. Robinson as Amicus Curiae on behalf of Petitioner.

Irwin & Melby for Respondents.

Orrick, Dahlquist, Neff & Herrington, George Herrington and Walter G. Olson, as Amici Curiae on behalf of Respondents.

MOORE, P. J.—The City of Glendale, petitioner herein, by ordinance No. 2485 of its city council authorized the issuance of 210 revenue bonds of the par value of $100,000 each and provided for them to be payable in consecutive, numerical order to bear interest at 3 per cent per annum, payable semiannually. The purpose of the issue is to provide moneys for the construction of a reservoir and the acquisition and construction "of additions to and extensions and improvements" of the city's waterworks system. All formal requirements to make the bonds negotiable have been executed except the signing of the bonds by the city's treasurer and clerk. The latter respectively have refused to sign and countersign the bonds on the ground that article XXVI of the city charter and Ordinance 2485 are invalid in that they authorize the incurring of an indebtedness by petitioner, contrary to section 18 of article XI of the Constitution. The sole question for decision then, is whether the issuance of such revenue bonds is violative of the specified section of the state's Constitution.

BACKGROUND

Petitioner has owned and operated its municipal waterworks since September, 1914. Its first venture was the sale then of "general obligation" bonds in the sum of $248,000 and of a second issue in the sum of $360,000 which was used for improvements and extension of the waterworks. Subsequent additions were made from the proceeds of municipal improvement districts under the Municipal Improvement District Act of 1915. The Municipal Improvement Districts were numbered 1, 4, and 7. The principal amounts of their bond issues were, respectively, $55,500 in 1918; $30,000 in 1921, and $23,000 in 1922. Thereafter, other pipe lines and connections were constructed pursuant to the Improvement Act of 1911 and substantial additions to and improvements of the waterworks were made and paid for by subdividers and other property owners. At the present time the value of the waterworks, after deducting the sum of $2,806,776.52 as depreciation, is $7,630,355.52 while its replacement value

is in excess of $10,000,000. The waterworks serve the domestic needs of about 100,000 people residing within the city, as well as the city's fire department, and alleviates water shortages in neighboring communities.

The ordinance is by its terms the city's contract with the purchasers of the proposed bonds. It establishes a separate fund, to wit, "Waterworks Revenue Bonds, Construction Fund," in the city treasury for the purpose of insuring the investment of the proceeds from the sale of the bonds in the acquisition and construction of additions to and improvements of the waterworks and the construction of a reservoir and main pipe lines.

The ordinance (section 9) provides for "Waterworks Revenue Bonds, Redemption Fund" in which there must be set aside moneys available and solely for the purpose of redeeming and sufficient to redeem, at the premiums payable, the bonds designated for redemption and such moneys must be applied on or after the redemption date to the payment of the principal and interest of the bonds and to no other purpose.

In addition to the redemption fund, the ordinance (section 11) establishes, pursuant to article XXVI, section 3 of the charter, a "1951 Waterworks Revenue Bonds, Reserve Fund" into which shall be paid from the Waterworks Revenue Fund at least once each month sums such that there will be on hand at least the full amount of cash required to pay, as it becomes due, at maturity, any installment of the principal of or interest on the bonds. Such moneys as are placed in the Reserve Fund are to remain until disbursed solely for payment of principal and interest, provided, however, that any excess of the sum required to be in the Reserve Fund may be temporarily invested in bonds which are legal investments for Glendale so long as such investment does not affect the city's obligation "to cause the full amount required by the terms of this section to be available in said Reserve Fund in cash at the time required by the terms of this section."

### Covenants With Bondholders

The ordinance requires that rates to be charged for services by the waterworks as extended and improved with the moneys received for the proposed bonds shall be so fixed as to provide revenues at least sufficient to pay at maturity all

installments of principal and interest as they mature and all other obligations payable from the Waterworks Revenue Fund or from any fund derived therefrom, including the expenses necessarily incurred in maintaining and operating the waterworks which shall not provide any real property rent free or furnish any water or service free to Glendale or to any entity at lower rates than those charged to others for similar service, with the exception of water used for street and sewer flushing as provided by Ordinance 1940.

The city covenants also with those who purchase the proposed bonds that no additional bond shall be issued pursuant to any charter provision or other law to have priority in payment out of the revenues of the waterworks over the bonds proposed by Ordinance No. 2485, nor shall any indebtedness of the city payable out of the "Waterworks Revenue Fund" be created or incurred unless the net income[1] of the waterworks for the latest fiscal year shall have amounted to (1) at least twice the amount of interest to accrue on investments other than the waterworks and (2) at least one and one-fourth times the aggregate amount of interest to accrue and payments of principal required to be made in the subsequent fiscal year in which such aggregate interest will be the greatest on all indebtedness outstanding subsequent to the incurring of such additional indebtedness.

The city further covenants that the waterworks shall not be disposed of unless such disposition provide for a continuance of payments into the Waterworks Revenue Fund sufficient to pay the principal interest and premiums due upon the redemption of all bonds payable out of that revenue fund. Books and accounts of the waterworks must be audited annually by an independent certified public accountant and a copy of the report of the accountant shall be furnished to any bondholder.

A copy of the bonds proposed is contained in the ordinance. It obligates petitioner to pay the principal and interest solely from the Waterworks Revenue Fund and declares that it does not constitute an indebtedness of the City of Glendale. It makes provision for its registration and redemption and other conventional rules of procedure relative to municipal bond issues.

---

[1] Including (1) earnings from investments made in additions to the waterworks not in service and (2) an allowance for earnings arising from increase in water rates.

## The Law

█ In view of the contract offered by petitioner to those who may purchase the proposed bonds, no legal barrier is found to justify respondents' refusal to sign the bonds.

█ Section 18 of article XI of the Constitution is not intended to be a veto of all indebtedness that may be contracted by a city on behalf of an independent agency or of a special fund which may have been established to serve the general welfare and which agency is financed solely by its own operations and to which the city's tax funds make no contribution at all. Section 18 inhibits every city to "incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose . . ."

The waterworks whose replacement value is now 10 million dollars has been built up from rude beginnings. In its 37 years of existence it has paid its own way without contribution from the general tax fund. In the past six fiscal years its total net income has exceeded $2,500,000, an average of over $400,000 yearly. Not only has the waterworks been a money making agency of Glendale but in the period last mentioned, its electric works have earned a net income in excess of $6,400,000—or over a million dollars annually. Judged by its net earnings, the public service department of petitioner is firmly established as a group of successful independent profit-making agencies of a prosperous city. From a practical standpoint, in the light of the waterworks' successes, it cannot be said that it is at all probable that, aside from the legal nonliability of the city on the proposed bonds, one of them would ever default for nonpayment.

█ But the bonds could not become a debt or liability of the city. The bond on its face declares as much. The ordinance creating the bond issue so provides. The source of repayment is the revenue collected from the operation of the waterworks. The city charter (article XXVI) forbids the issuance of any bonds having priority in payment out of the revenues of the waterworks. The city covenants that (1) no money shall be transferred from Waterworks Revenue Fund into the Public Service Surplus Fund until provision has been made for payment into the Reserve Fund as required by the ordinance; (2) the waterworks shall make no gift to

anyone; (3) the water rates to be charged shall be fixed so as to provide revenues at least sufficient to pay the bonds and the costs of maintaining and operating the waterworks; (4) no debt or revenue bonds shall be payable out of the Waterworks Revenue Fund unless the income of the waterworks shall greatly exceed double the interest to accrue on the proposed bonds; (5) the waterworks shall not be sold unless arrangement be made for a continuance of the payments into the Waterworks Revenue Fund and (6) a report of the accounts of the waterworks by a certified accountant be made annually to the bondholders.

The establishment of (1) the waterworks as an independent agency, .(2) the ''Waterworks Revenue Bonds, Construction Fund,'' (3) the ''Waterworks Revenue Bonds, Reserve Fund,'' and the issuance of the proposed bonds as an aid to the waterworks' operation and extensions are ingenious and commendable devices of a city in the conduct of its municipal affairs and serve to prevent its incurring a liability to pay the bonds without binding the general public fund to contribute to the financing of such public works.

█ The city council's authorization of the bond issue does not make the city a party to the loan agreement. (*Department of Water & Power* v. *Vroman,* 218 Cal. 206, 217 [22 P.2d 698].) How could it do so despite the declaration in the ordinance that no legal obligation is thereby incurred against the city? █ The fact that the city council covenants to fix the rates to be charged so as to provide sufficient revenues to meet the payments on the bonds as they become due out of the Waterworks Revenue Fund incurs no liability against the city. (*Ibid.* p. 218.)

The amici curiae who appear in support of respondents contend that, although the moneys to be received from the sale of the bonds are payable only out of the net earnings of the waterworks, should that fund prove to be inadequate, the general fund will be invaded and the taxpayer be required to pay the sums due on the bonds. In reason how could such claim be made? In *Shelton* v. *City of Los Angeles,* 206 Cal. 544, at 551 [275 P. 421] Mr. Justice Shenk says this obligation ''is not a financial one in default of which the city would be required to disburse the general funds of the city or other moneys derived from taxation.'' By the ordinance the revenue funds are set aside as a special fund whose obligations are not responsive to section 18 of article XI. (*Department of Water & Power* v. *Vroman, supra,* p.

219; *Shelton* v. *City of Los Angeles, supra*; *California Toll Bridge Authority* v. *Kelly*, 218 Cal. 7 [21 P.2d 425].)

The marking of a fund for a special purpose by a municipality has given rise to the Special Fund doctrine to which the jurisprudence of this state is committed. Amici curiae contend that such doctrine has been so limited by *Garrett* v. *Swanton*, 216 Cal. 220 [13 P.2d 725], as to render it worthless as support for petitioner. In *Department of Water & Power* v. *Vroman* Justice Shenk pointed out that in *Garrett* v. *Swanton* the contracting party was the city "directly submissive to the constitutional mandate," and in *California Toll Bridge Authority* v. *Kelly*, page 14, the same learned justice suggests that in the Garrett case "the bonds were city bonds, and were not payable solely from the special fund created by the segregation of the revenues for that purpose, but also from the general funds of the city in the event the special fund should be insufficient." The law governing the operation and disposition of a special fund such as that established as the "Waterworks Revenue Bonds, Reserve Fund" is declared (*ibid.*) by Justice Shenk in the following: "These funds are special funds, and obligations payable solely from such funds do not constitute a debt within the meaning of the constitutional limitation involved." (See *Briggs* v. *Greenville County*, 137 S.C. 288, 301 [135 S.E. 153] ; *Wright* v. *Hardwick*, 152 Ga. 302 [109 S.E. 903] ; *Alabama State Bridge Corp.* v. *Smith*, 217 Ala. 311 [116 So. 695].) That subordinate municipal boards may contract for payment of moneys from their special funds and that such contracts are not violative of section 18 of article XI of the Constitution was, upon an extensive review of the authorities of other jurisdictions, declared to be the law of this state in *Shelton* v. *City of Los Angeles*. The contract of a city for the payment of money out of a special fund, such as is involved herein, may impose a strong moral obligation to approve a schedule of rates to discharge the principal and interest of the indebtedness as it becomes due. Such obligation is not of a financial character in default of which the city would be required to disburse its general funds derived from taxation.

While the "waterworks" of Glendale is not a separate corporation, that fact offers no hindrance to the application of the "separate fund" theory. If a person may contract to pay a sum of money solely out of a specified property or fund without imposing any obligation upon himself per-

sonally; if an independent corporation may make an enforceable promise to repay moneys solely from the proceeds of sale of a specific property, why cannot a municipality obtain money on a loan to be repaid solely from a fund set aside for the purpose, without obligating its general fund?

■ The right of contract includes the right to agree upon designated terms and to be guided solely thereby and this applies to municipalities as well as to persons.

Amici curiae on behalf of respondents urge with vehemence the inapplicability of the authorities from other jurisdictions[2] cited by petitioner and insist that *Garrett* v. *Swanton, supra,* is controlling in the case at bar. To say the worst, the construed authorities of other states are not contrary to the holdings in the Shelton, Kelly and Vroman cases, whereas the quoted passages from the last two decisions clearly distinguish the Garrett case as not applicable to the situation involved herein.

The same amici curiae contend that the "revenues the city is now using for the payment of municipal expenses . . . will be diverted to an entirely different purpose, namely, the payment of principal and interest of a new issue of Revenue Bonds." Nothing in the record supports such contention. For decades the waterworks has carried on. It has paid no part of the "municipal expenses" and the general fund has contributed no substantial payment to the waterworks. In view of the stupendous operations and the net income of the waterworks during the past six years what chance is there that the city will be compelled to "levy and collect sufficient taxes to pay the cost of operation of the city" to prevent the holders of the new bonds from seizing the entire income of the waterworks?

Amici curiae argue that the city is obligated either to feed the special fund or to lose its entire investment in the water system. Such argument is based upon fear or suspicion! A reasonably prudent person will see that the bonds are not obligations of the city but are secured by a special fund

---

[2]*McCutchen* v. *City of Siloam Springs* (1932), 185 Ark. 846 [49 S.W. 2d 1037]; *Johnson* v. *McDonald* (1935), 97 Colo. 324 [49 P.2d 1017]; *Chitwood* v. *Lanning* (1934), 218 Iowa 1256 [257 N.W. 345]; *Interstate Power Co.* v. *Incorporated Town of McGregor* (1941), 230 Iowa 42 [296 N.W. 770, 777, 146 A.L.R. 315]; *Farmers State Bank of Conrad* v. *City of Conrad* (1935), 100 Mont. 415 [47 P.2d 853]; *Seward* v. *Bowers* (1933), 37 N. M. 385 [24 P.2d 253]; *Winston* v. *City of Spokane* (1895), 12 Wash. 524 [41 P. 888]; *Castro* v. *Town of Ripley* (1934), 114 W. Va. 668 [173 S.E. 886]; *Laverents* v. *City of Cheyenne* (1950), —— Wyo. —— [217 P.2d 877].

which is growing at a rate in excess of over $400,000 annually and which became part of a larger, independent fund for the maintenance of the electric power plants and the waterworks.

The application of the special fund doctrine to bond issues, such as that proposed, with the approval of the Supreme Court (*Department of Water & Power* v. *Vroman, supra*) cannot fairly be deemed "only a subterfuge to subvert the constitutional limitation" or "a trick and device to avoid submitting the proposition to the electors," as argued on behalf of respondents.

Neither does the subsistence of outstanding bonds issued for the purpose of the improvement and extension of waterworks, certain Municipal Improvement District bonds and bonds of the Metropolitan Water District create out of the proposed bonds such indebtedness as is forbidden by section 18 of article XI. The "city" bonds and the Municipal Improvement bonds are payable only out of the revenues derived from the sale of water. While the bonds of the Metropolitan Water District may be paid with moneys obtained by the levy of taxes on property within the corporate limits of Glendale, yet since the city may pay its proportionate share of such bonds out of revenues derived from the waterworks, it cannot be reasonably said that the district's bonds constitute a debt of the taxpayers of Glendale. The city is but a small speck of the vast area comprising the district. Its taxable property is less than 4 per cent of that of the district which is not bound by section 18 of article XI since it is not one of the entities mentioned therein. Cities within the district may elect to pay money out of water revenues in lieu of taxes (Stats. 1927, p. 694; 3 Deering's Gen. Laws, Act 9129) and by virtue of such provision the taxpayer of the city is released from liability on the bonds of the district. (*Security Trust & Sav. Bank* v. *City of Los Angeles*, 120 Cal. App. 518, 524 [7 P.2d 1061].) Such bonds, therefore, do not constitute a peril to the credit of Glendale. On the contrary, the waters from the Metropolitan Water District may in time send a refreshing stream through the network of water mains of Glendale and environs, bringing not only comfort and security but a tremendous increase in revenues.

Without regard to whatever may happen to "city" bonds or to the Improvement District bonds which were approved by a two-thirds vote of the electorate by the terms of the ordinance and the proposed bonds, the latter are to be col-

84

lectible only out of the Waterworks Bonds, Reserve Fund, created out of revenues earned by the waterworks.

While in the Garrett decision the court indicated that the depletion of the revenue fund below the safety point might render taxation necessary for the payment of the outstanding bonds thereby creating an indebtedness forbidden by section 18, article XI of the Constitution, yet in the subsequent Vroman decision with facts which closely parallel those at bar, the same court held that a depletion of the revenue fund to the same degree would not create an indebtedness contrary to the Constitution.

It must therefore be held that petitioner is entitled to the relief demanded.

It is ordered that the peremptory writ issue.

McComb, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 31, 1952. Edmonds, J., voted for a hearing.