[L. A. No. 25251. In Bank. Aug. 18, 1959.]

CITY OF PALM SPRINGS, Petitioner, v. MARY G. RINGWALD, as City Clerk, etc., Respondent.

Jerome J. Bunker, City Attorney, Kirkbride, Wilson, Harz-feld & Wallace and Ernest A. Wilson for Petitioner.

Thompson & Colegate, Roy W. Colegate and F. Gillar Boyd, Jr., for Respondent.

McCOMB, J.—Petitioner is a general law city governed by a city council. An ordinance was enacted by the council pursuant to the Parking District Law of 1951 (Sts. & Hy. Code, § 35100 et seq.) providing for a proposed parking district to be known as Parking District No. 1 of the city of Palm Springs.

To pay the cost of acquiring property for the parking lots and to construct improvements and install parking meters, the ordinance provides that bonds shall be issued in the amount of $1,400,000. It further provides that the bonds and interest thereon are not to be a debt of the city, or a charge, lien, or encumbrance, legal or equitable, on any of the city's property or upon any of its income, receipts or revenues, other than the revenues pledged to the payment thereof.

The revenues to be pledged are to be derived from the following sources: (1) the net revenue from parking facilities to be acquired; (2) the net revenue from street parking meters existing or to be installed within the proposed district; (3) contributions of money by the city to the district; and (4) the creation of a special fund to be supplied from future revenue from the city's sales and use taxes.

The first three proposed methods of financing the parking district bonds are specifically enumerated in section 35411 of the Streets and Highways Code. There is no provision in the act for the pledge of sales and use tax revenue for such purpose.

Respondent city clerk refuses to publish the ordinance, upon the ground that it and the bonds proposed to be issued pursuant to it are and will be invalid. Petitioner seeks a writ of mandate compelling the city clerk to cause the ordinance to be published.

These questions are presented:

First: *Is mandamus a proper remedy to compel a city clerk to publish an ordinance whereby a city is attempting to set up a parking district?*

*Yes.* Mandamus is an appropriate remedy in such a case if the proposed ordinance meets the requirements of the law, since the act demanded is a ministerial duty. (*Cf. City of Walnut Creek* v. *Silveira,* 47 Cal.2d 804, 807 [1] [306 P.2d 453]; *City of Oxnard* v. *Dale,* 45 Cal.2d 729, 731 [1] [290 P.2d 859].)

 Second: *Do the ordinance and the proposed bond issue violate the constitutional limitations on municipal debt contained in article XI, section 18, of the California Constitution?*

*Yes.* The city proposes to pledge as a trust fund part of city sales and use tax revenue to be received in future years. This sales and use tax revenue is to supplement the income from the operation of the parking areas to be acquired and the parking meters, because such income alone will be insufficient to discharge the bond payments as they become due.

There is no provision in the law for the pledge of sales and use tax revenue for such purpose. Section 35255 of the Streets and Highways Code reads: "The statement of the amount of city contribution in the petition or in the resolution of intention shall not prevent the city from making additional contributions to the project before or after the issuance of bonds therefor and shall not prevent the city from paying all or any part of the incidental expenses in connection with the proceedings under this part."

Petitioner's theory is that if it is empowered to make contributions under section 35255 of the Streets and Highways Code "after the issuance of bonds," it has implied authority to pledge those contributions in futuro, as proposed.

Petitioner's contention is unsound, for the reason that diversion of future sales and use tax revenue from the general fund of the city without advance approval of two thirds of the electorate would violate the provisions of article XI, section 18, of the California Constitution, which reads in part: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof. . . ."

It is conceded that petitioner does not propose to hold a bond election or seek the approval of the bonds by two thirds of the electors, asserting that such election is unnecessary because the sales and use tax revenues are to be pledged to a special fund and therefore section 18 of article XI of the California Constitution is not applicable. However, as hereinafter appears, the present case does not fall within the special fund doctrine.

California has recognized the special fund doctrine, which holds that revenue bonds or other obligations of a governmental body payable solely from a special fund do not violate section 18 of article XI of the California Constitution, provided the governmental body is not liable to maintain the special fund out of its general fund, or by tax levies, should the special fund prove insufficient.

This doctrine is recognized by decisions of the courts of this state and not by statute. The cases that have recognized and defined the doctrine in this state have placed certain limitations upon its applicability. It has been held, first, that the indebtedness so created must not be an indebtedness or obligation of the governmental body concerned, which in this case is a city. This requirement has been satisfied by petitioner, as the ordinance provides in section 2930 thereof: "The bonds and interest thereon are not a debt of said City, nor a charge, lien or encumbrance, legal or equitable, upon any of its property or upon any of its income or receipts or revenues, other than the revenues which have been pledged to the payment thereof as herein provided."

The second requirement is that payments into the special fund beyond the current year, that is, payments in futuro, cannot be a charge upon the general fund; rather, the revenue must be supplied by the agency to be benefited.

In each case upholding the special fund doctrine, the payments pledged to be paid into the special fund have been from the revenue of the particular project to be benefited or the district or agency of which the project was to become a part.*

---

*California cases that have recognized and defined the special fund doctrine reveal the following in relation to the source of revenue or the project benefited:

In *Ryan* v. *Riley*, 65 Cal.App. 181, 190 [223 P. 1027], the Motor Vehicle Department benefited; the special fund was derived solely from the use of highways. In *Shelton* v. *City of Los Angeles*, 206 Cal. 544, 546 [275 P. 421], the department of water and power benefited; the special fund was provided from revenue derived from the department of water and power. In *In re California Toll Bridge Authority*, 212 Cal. 298, 301 [298 P. 485], the Toll Bridge Authority benefited; the

Prior to the decision in *City of Oxnard* v. *Dale*, 45 Cal.2d 729 [290 P.2d 859], there had been some doubt whether the source of revenue for the special fund had to be restricted to the improvements for which the bonds were issued or whether there could be a pledge of revenue from the entire facility or agency to be benefited. The broader view was adopted by this court, and the special fund doctrine in California was clarified accordingly. ▇ The rule governing the source of the special fund was stated by Mr. Chief Justice Gibson, at page 733: "The cases in California are not entirely clear as to the extent of the operation of the special fund doctrine, and there is a conflict of authority on the subject in other states. Some of the courts in other jurisdictions have held that revenue bonds payable solely from a special fund will not be free from the constitutional limitation unless the fund is restricted to the revenues from the particular improvement which is to be constructed out of the proceeds of the bonds in question, but under the prevailing view the doctrine may be applicable where the revenues of the entire existing system, as well as those of the proposed improvement, are pledged. (See Joint Report of Committees of the American Society of Civil Engineers, the Section of Municipal Law of the American Bar Association and others (1951), 12 Ohio State L.J. 147, 182 et seq.; 38 Am.Jur. 155-156.)"

*City of Walnut Creek* v. *Silveira*, 47 Cal.2d 804 [306 P.2d 453], did not overrule the holding in *City of Oxnard* v. *Dale*, *supra*, and the other cases referred to in the footnote on pages 624-625.

---

special fund was provided from revenues collected as tolls by the Toll Bridge Authority. In *California Toll Bridge Authority* v. *Kelly*, 218 Cal. 7, 13 [21 P.2d 425], the special fund was provided from tolls to be collected from use of a particular bridge for which bonds were issued. In *Department of Water and Power of the City of Los Angeles* v. *Vroman*, 218 Cal. 206, 211, 217 [22 P.2d 698], power facilities of the city benefited; the special fund was derived from the sale or use of electricity. In *Housing Authority* v. *Dockweiler*, 14 Cal.2d 437, 460 [94 P.2d 794], the Housing Authority benefited; the revenue was derived from the housing project and any annual contributions made by the federal authorities to the Housing Authority. In *City of Glendale* v. *Chapman*, 108 Cal.App.2d 74, 76, 79 [238 P.2d 162], existing waterworks benefited; the special funds were supplied by revenue collected by the waterworks. In *Board of State Harbor Commissioners* v. *Dean*, 118 Cal. App.2d 628, 631 [258 P.2d 590], the San Francisco Harbor benefited; the special fund was provided from revenue derived from harbor facilities. In *City of Oxnard* v. *Dale*, 45 Cal.2d 729, 732 [290 P.2d 859], a sewer system benefited; the special fund was derived from the gross revenues from the sewer system.

In the Walnut Creek case this court upheld the constitutionality of an act authorizing cities of less than 4,000 population to issue limited obligation bonds to be paid solely from sales and use taxes, provided the proceeds from the bonds were used for the acquisition, construction, and completion of certain types of municipal improvements. However, the Limited Obligation Bond Law specifically made a favorable vote of two thirds of the electors voting a prerequisite to the issuance of the bonds (Gov. Code, § 43614), and compliance with this requirement was had in the Walnut Creek case. It was therefore unnecessary to determine whether the special fund doctrine made the requirements of section 18 of article XI of the Constitution inapplicable.

As hereinabove set forth, in order for the special fund doctrine to apply, payments in futuro cannot be a charge upon the general funds. As was said in *City of Oxnard* v. *Dale, supra*: ". . . an obligation which is payable out of a special fund is not an 'indebtedness or liability' of a governmental body within the meaning of section 18 of article XI of the Constitution if the governmental body is not required to pay the obligation from its general funds, or by exercise of its powers of taxation, should the special fund prove insufficient." (45 Cal.2d, p. 737.)

The words "not required to pay the obligation from its general funds" are here controlling. The sales and use taxes which petitioner proposes to pledge are excise taxes and will constitute general funds of petitioner unrelated to the parking district. Therefore, the fund established by the ordinance here in question does not meet the requirements of the special fund doctrine. Accordingly, the sales and use taxes may not be diverted from petitioner's general funds for the purpose proposed for a period beyond the year in which received unless there has been compliance with section 18 of article XI of the Constitution.

Third: *Is section 18 of article XI of the California Constitution applicable only to property taxes?*

*No.* Section 18 of article XI uses the language "exceeding in any year the *income and revenue* provided for such year." (Italics added.)

It may be true, as argued, that at the time section 18 of article XI was adopted a city or county received very little income or revenue other than from property taxes. This fact, if true, does not support an implication that would justify a restrictive interpretation of the words "income and revenue,"

which are clear and unambiguous. The foresight of those who framed the constitutional provision has been demonstrated. Cities and counties have developed into more and more complex governmental organizations, offering many new and widely varying types of service. The increase in volume, as well as variety, of services demanded by an evolving society has added to the cost of government. Cities and counties have found it increasingly difficult to meet such costs by property tax revenue alone. Necessity has required them to devise ways of supplementing that source of income, and the sales and use tax with which we are concerned is a pertinent example of such a tax. The scope of section 18 of article XI clearly encompasses not alone property taxes but also the other types of "income and revenue" taxes that produce revenue for the general fund.

There is no merit in petitioner's argument that "If the city makes reasonable provisions for its creditors, it should be permitted, in the exercise of its taxing power, to determine for what objects of public convenience and welfare its power shall be exercised and to appropriate moneys to those objects."

■■■ The purpose of section 18, article XI, of the Constitution is not to interfere with the city's exercise of its discretion in determining for what objects of public convenience and welfare its power shall be exercised or for which money may be appropriated. It is designed to afford the people who are required to pay the cost of providing such objects of public convenience and welfare an opportunity to express their approval or disapproval of a long-term indebtedness. The constitutional provision does not prohibit the legislative body of the city from spending any or all of its current income for whatever it deems proper or necessary objects of public convenience or welfare. It simply provides that the legislative body may not encumber the general funds of the city beyond the year's income without first obtaining the consent of two thirds of the electorate.

The writ is denied.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., and Peters, J., concurred.

Petitioner's application for a rehearing was denied September 16, 1959.