[No. A102772. First Dist., Div. Three. Jan. 21, 2004.]

LAW OFFICES OF CARY S. LAPIDUS, Plaintiff and Respondent, v. CITY OF WASCO et al., Defendants and Appellants.

1362

**COUNSEL**

N. Thomas McCartney for Defendants and Appellants.

Berger, Nadel & Vannelli and Robert D. Links for Plaintiff and Respondant.

## Opinion

**POLLAK, J.**—The City of Wasco (Wasco) and the Wasco Public Financing Authority (WPFA)[1] appeal from a writ of mandate directing them to make appropriate budgetary appropriations for payment to plaintiff Law Offices of Cary S. Lapidus (Lapidus) of the enforceable portion of a money judgment in his favor. Appellants contend that the superior court's order violates article XVI, section 18 of the California Constitution (section 18), which prohibits a city from incurring any indebtedness or liability exceeding in any year the income and revenue of the city for that year, without approval of two-thirds of the qualified voters of the city. We agree that the constitutional restriction is inapplicable to the circumstances of this case and, therefore, affirm.

## Background

The background of the present controversy is rather complex, and many of the underlying issues are not fully developed in the record that is before this court. However, a simplified version of the facts is sufficient to evaluate the single issue presented by this appeal.

WPFA was created in 1989 by a joint powers agreement between Wasco and the Wasco Redevelopment Agency to provide a mechanism for the issuance of bonds to raise capital for municipal projects. In that year, $35 million was raised by the issuance of two series of bonds, for which First California Capital Market Group, Inc. (First California) served as the underwriter. The local projects that were to be financed with the proceeds of these financings did not consume all of the funds and, at the recommendation of First California, WPFA invested a portion of the proceeds in projects of other municipalities, including a project of the City of Rosamond, which First California also represented.

By 1995, some of the assets securing the bonds had declined in value, posing a risk of default, and First California and the 1989 WPFA financings became the subject of an investigation by the Securities and Exchange Commission (SEC). In August 1995, Wasco and WPFA retained Lapidus to represent them on an hourly basis in connection with the investigation. During the course of this representation, Lapidus advised Wasco and WPFA to pursue claims he felt they had against First California and its president, H. Michael Richardson. In October 1995, Wasco and WPFA entered a new retainer agreement with Lapidus under which Lapidus agreed to pursue those claims on a contingency fee basis.

---

[1] Appellants also include the city manager and members of the city council of Wasco, all of whom are included in the writ of mandate in their official capacities.

In November 1995, Lapidus negotiated an agreement on behalf of Wasco and WPFA with First California and Richardson. Under this agreement, First California entered into a program of bond trades and related market activities (the November Program) designed to reduce the risk of default by paying off certain of the outstanding bonds and stabilizing the market for others. Pursuant to the November Program, First California caused $120,000 to be paid to the City of Rosamond, realized at least $650,000 in profits that remained available to repurchase additional bonds and, over a period of months, paid Lapidus $91,226 of fees owed to him by Wasco and WPFA for his services in connection with the investigation and the implementation of the November Program.

On August 30, 1996, faced with a dispute as to whether First California had successfully completed the November Program, Lapidus on behalf of Wasco and WPFA filed a demand for arbitration against First California and Richardson. Negotiations between the parties continued, however, and at the end of 1996 two further agreements (denominated the "Series A Agreement" and the "Settlement Agreement") had been drafted. At that point, Wasco and WPFA discharged Lapidus and retained new counsel, who completed the negotiations. Finalized agreements were executed on January 10, 1997. Under these agreements, First California agreed to engage in a second program of trades and to pay various amounts designed to permit the repurchase of the remainder of the outstanding bonds at no loss to Wasco, WPFA or the bondholders.[2] First California also agreed to pay fees and costs incurred by Wasco and WPFA in the amount of $260,000.

In May 1997, Lapidus initiated arbitration proceedings against Wasco and WPFA, claiming that under his contingency fee agreement he was entitled to one-third of the amounts recovered from First California under the three agreements specified above. Wasco and WPFA disputed this claim on numerous grounds and the fee dispute was submitted to binding arbitration. The arbitration panel found that as the result of Lapidus's efforts, Wasco and WPFA had obtained a net recovery valued at $1,479,467.50, and that the reasonable value of Lapidus's services, to which he was entitled, was one-third of that amount, or $484,155.83. Against that amount, the arbitrators deducted the portion of the $91,226 in fees paid to Lapidus by First California that the arbitrators allocated to services compensable under the contingency fee agreement ($46,327). The arbitration panel further distinguished the portion of the fees derived from recovery that had already been received, which was payable immediately, from the fees to which Lapidus would become entitled only "if, when and to the extent" the additional

---

[2] At the point at which Lapidus was terminated, First California had agreed to pay $359,581 for this purpose. Successor counsel negotiated this amount to a higher figure. Lapidus's claim for attorney fees was based only on the lower amount he had negotiated.

recovery is actually received. The recovery already received consisted of the $120,000 payment on the Rosamond bonds, $199,375 already paid of the agreed $260,000 cost reimbursement, and the $91,226 in attorney fees paid to Lapidus. Deducting from one-third of the total of these three amounts ($136,867) the credit of $46,327, and after making a relatively minor correction in a subsequent order modifying the award, the arbitration panel determined that "Lapidus is presently owed $86,170.08, plus interest at 10% per annum on the unpaid balance from the date or dates Respondents received the payments." The award also ordered Wasco and WPFA to reimburse Lapidus $21,436.95 for costs and fees of the arbitration.[3]

In May 1998, the superior court entered an order confirming the arbitration award and a judgment thereon. After adding interest unpaid through April 24, 1998, the judgment was in the total amount of $481,293.38 plus costs, with the determination that "[t]he judgment shall be enforceable immediately to the extent of $134,004.63." Enforcement of the remainder of the judgment was stayed pending receipt by Wasco and WPFA of the balance of the settlement proceeds. No appeal was taken from this judgment, which has long since become final.

In February 2003, Lapidus filed a petition for a writ of mandate to compel payment of the unpaid balance of the enforceable portion of the judgment. After hearing argument in opposition to the petition, the superior court granted the petition and ordered appellants "to make appropriate budgetary appropriations for payment to [Lapidus] of the enforceable portion of the judgment." After deducting credits of $95,000[4] and adding interest from May 14, 1998, the superior court determined that as of the date of its order on April 28, 2003, the amount enforceable was $83,043.34, with interest continuing to accrue at the rate of $17.64 per day until paid. Wasco and WPFA timely appealed from this order.

## Discussion

"Article XVI, section 18 of the California Constitution provides in relevant part: 'No . . . city . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof,

---

[3] The award also included an additional $10,882.50 for the balance of fees owed Lapidus in connection with the SEC investigation. Lapidus was authorized to pay himself $10,000 out of funds held in his trust account against this balance.

[4] The credits consisted of the $10,000 paid out of the trust account (see fn. 3, *ante*), $25,000 received from the proceeds of another action which Lapidus agreed would be credited to this obligation, and an additional $60,000 received in the same action which the superior court had previously determined should be credited against the obligation.

voting at an election to be held for that purpose . . . .' This provision, formerly found in article XI, section 18, has been part of the California Constitution since 1879. It was intended to prevent municipalities from incurring debts and liabilities exceeding their revenue, a practice that had created heavy burdens on future municipal revenues. It has been construed to require each year's debts and liabilities to be paid from that year's revenue, and to bar payment from the revenue of any future year. Those contracting with a municipality are presumed to know the extent of its authority, and must bear the risk of a shortfall in the current year's revenues." (*Barkley v. City of Blue Lake* (1996) 47 Cal.App.4th 309, 313–314 [54 Cal.Rptr.2d 679].)

"[A] city can violate the constitutional requirement by incurring even a very small debt if the city's other obligations during that year have already exhausted the city's total revenues for the year. [Citation.] For this reason, section 18 is more accurately understood as mandating balanced budgets than merely as regulating the debt financing of public capital improvements." (*Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1045 [77 Cal.Rptr.2d 189, 959 P.2d 347] (*Rider*).)

Wasco contends that in light of the factual showing it made in opposition to Lapidus's petition, the order issued by the superior court violates section 18.[5] Wasco submitted uncontradicted evidence that for each of the fiscal years 1994–1995, 1995–1996, 1996–1997, and 1997–1998, the city's expenses exceeded its revenues. While the excess of expenses was initially paid out of a surplus in the general fund, which at July 1, 1995 equaled $280,163, by June 30, 1998, there was a general fund deficit of $201,574. According to Wasco's city auditor, "Wasco survived the general fund deficit by borrowing from other funds on a short-term basis. Wasco began to rectify the general fund balance in fiscal year 1998–1999. It was not until the fiscal year, 2000–2001, that Wasco was able to completely eliminate the general fund deficit." Thus, during each of the years spanning the entry of the contingency fee agreement through the award of the arbitration panel determining the amount of fees to which Lapidus is entitled, Wasco lacked the revenue to pay this obligation. Wasco argues that section 18 prohibits the city from paying

---

[5] In their opening brief, appellants also argued that in no event should the superior court's order be directed to WPFA because it has no funds. However, Lapidus correctly pointed out that section 18 provides only that "[n]o county, city, town, township, board of education, or *school district*" shall *incur an indebtedness* prohibited by that section, and in *Rider* the Supreme Court held expressly that this provision "does not include joint powers agencies in this list of public entities that cannot incur indebtedness without a two-thirds vote." (*Rider, supra,* 18 Cal.4th at p. 1043.) Appellants made no further reference to this contention in their reply brief. Neither in the trial court nor in their arguments to this court has there been any careful consideration of whether funds held by the WPFA are subject to the prior rights of other creditors such as the bondholders. We do not pass on any such question. We anticipate that in view of the conclusions reached in this opinion, the funds to pay Lapidus will be appropriated and paid by Wasco, pursuant to Government Code sections 970.2 and 970.8.

the obligation with revenues from subsequent years, so that its obligation to Lapidus is uncollectable. (*San Francisco Gas Co. v. Brickwedel* (1882) 62 Cal. 641, 642 ["each year's income and revenue must pay each year's indebtedness and liability, and . . . no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year"]; see *Compton Community College etc. Teachers v. Compton Community College Dist.* (1985) 165 Cal.App.3d 82, 88–89 [211 Cal.Rptr. 231].)

Nonetheless, "[c]ertain exceptions or limitations to the balanced budget requirement of section 18 are almost as old as the requirement itself." (*Rider, supra,* 18 Cal.4th at p. 1046.) *Rider* summarizes the three principal exceptions that the Supreme Court has recognized. "First, we have long held that the debt limitation in section 18 only applies to discretionary debt, not to obligations imposed by state law." (*Ibid.*; see also *Compton Community College etc. Teachers v. Compton Community College Dist, supra,* 165 Cal.App.3d 82.) Lapidus does not seek to invoke this exception, but he does rely on the other two. The third exception described in *Rider*, on which that case turned, is that "the debt limitation in section 18 does not apply when a local government enters into a contingent obligation." (*Rider, supra,* 18 Cal.4th at p. 1047.) However, although Lapidus's claim arises out of a contingency fee contract, this exception does not apply here. This exception recognizes that " '[a] sum payable upon a contingency is not a debt, nor does it become a debt until the contingency happens' " and has been used "to uphold multiyear contracts in which the local government agrees to pay in each successive year for land, goods, or services provided during that year." (*Ibid.*) In those cases, the reasoning is that the aggregate debt does not arise when the contract is entered, so that section 18 is not violated so long as the liability for each payment is contingent on receiving the consideration for which that payment is made. (*Ibid.*) This reasoning has no application to the present case. Lapidus became entitled to receive his contingent fees as Wasco obtained the recovery to which his fees were tied, and certainly no later than when the superior court confirmed the arbitration award in his favor. Once the contingency has occurred, the debt arises and section 18 applies. For the entire period over which Lapidus's right to fees matured, the city's expenditures exceeded its revenues. Hence, this exception provides no help to Lapidus.[6]

It is the second exception described in *Rider* that is critical here. The Supreme Court has "long held that the debt limitation in section 18 does not

---

[6] Arguably this exception may apply to the portion of the judgment that had not become enforceable when the writ of mandate was issued, since Lapidus's right to recover that amount remained dependant on the city's receipt of the settlement consideration. However, this issue is not presented by the present appeal and, in view of the conclusion we reach with respect the special fund exception, may be academic.

apply to debts that a local government will pay from nontax revenues it holds in a special fund." (*Rider, supra,* 18 Cal.4th at p. 1046.) Typically this exception is invoked to validate the obligation a municipality may undertake to repay bonds solely with the revenues derived from a project constructed with the proceeds of the bond financing. "It is settled in California and recognized in almost all of the other states that, as a general rule, a constitutional provision such as section 18 . . . is not violated by revenue bonds or other obligations which are payable solely from a special fund, provided the governmental body is not liable to maintain the special fund out of its general funds, or by tax levies, should the special fund prove insufficient." (*City of Oxnard v. Dale* (1955) 45 Cal.2d 729, 733 [290 P.2d 859]; see also, e.g., *City of Palm Springs v. Ringwald* (1959) 52 Cal.2d 620 [342 P.2d 898].)

Wasco argues that the "touchstone of the special fund doctrine is the requirement that the obligation can only be paid from the special fund," and the very fact that the trial court has ordered it to make budgetary appropriations to pay Lapidus demonstrates that the special fund doctrine has no application here. The city's argument is too facile. Under the contingency fee agreement, Lapidus was entitled to receive one-third of any recovery obtained by the city as a result of his efforts, and he was entitled to receive *only* that amount. If there was no recovery, or if the contingent fee turned out to be less than he would otherwise have been entitled to charge for his services, the city undertook no obligation to pay him any additional amount. This arrangement did not involve the vice that section 18 was designed to prohibit. The agreement did not place "a charge upon the general funds" of the city (*City of Palm Springs v. Ringwald, supra,* 52 Cal.2d at p. 626), nor create a situation in which future taxpayers might be strapped with obligations incurred by a prior administration without the ability to meet those obligations or the necessary voter approval. (Cf. *id.* at p. 627.) By paying Lapidus what he was entitled to receive out of any recovery obtained by his efforts, there was no risk of the city incurring a liability prohibited by section 18.

▇ Cases in which the special fund doctrine has been considered illustrate why the exception applies here. In *City of Palm Springs v. Ringwald, supra,* 52 Cal.2d 620, the city proposed to issue bonds to finance improvements for a new parking district, in support of which the city was to pledge net revenues from the parking facilities, contributions by the city, and a special fund to be supplied from future sales and use tax revenues. The sales and use tax revenue was to supplement any shortfall in the revenues from the parking facilities. Because the sales and use taxes would constitute general funds of the city unrelated to the parking district, the Supreme Court held that "the fund established by the ordinance here in question does not meet the requirements of the special fund doctrine." (See also, e.g., *Starr v. City and County of San Francisco* (1977) 72 Cal.App.3d 164, 173–177 [140 Cal.Rptr.

73].) In contrast, in *City of Oxnard v. Dale*, the city was permitted to issue bonds to finance improvements to an existing sanitary sewer system, and to pledge in support of the bonds all revenue from the preexisting sewer system as well as those derived from the improvements purchased with the bond proceeds. The special fund exception applied, and section 18 was no bar to the financing arrangement, because "the governmental body is not required to pay the obligation from its general funds, or by exercise of its powers of taxation, should the special fund prove insufficient." (*City of Oxnard v. Dale, supra,* 45 Cal.2d at p. 737; see *Starr v. City and County of San Francisco, supra,* 72 Cal.App.3d at p. 175 ["the fundamental principle [under section 18 is that] the future encumbrance of the City's general fund beyond the year in which income is received . . . alone violates the constitutional provision"].) In the present case, the contingency fee agreement did not obligate Wasco to pay Lapidus any attorney fees from the general funds of the city or from any future revenue source other than the recovery generated by his own efforts. Hence, the agreement itself did not give rise to an obligation that violated section 18.

The issue here has arisen because Wasco and WPFA failed to apply the proceeds of the recovery procured by Lapidus in the manner required by the contingency fee agreement. Appellants argue that the $120,000 component of the enforceable portion of the judgment was paid directly to the Rosamond bond pool and never passed through the hands of Wasco or WPFA. That may be, but if those funds were used to satisfy an obligation of Wasco or WPFA, as they presumably were, that part of the recovery nonetheless produced a financial benefit to one or both of the appellants without imposing any burden on the general funds of the city. The $91,226 component in attorney fees was paid directly to Lapidus. However, as indicated above, $46,327 of this amount was applied as a credit against the contingency fee and the balance, like the $120,000, reduced an outstanding obligation of the appellants. What is most plain is that the $199,375 component was received in cash, which appellants argue was used to "reimburse Wasco for general fund expenses." Under the contingency fee agreement, however, Wasco was not entitled to use the full amount of the recovery to meet or reimburse itself for its other obligations. Lapidus was entitled to one-third of the recovery, and appellants were not entitled to appropriate this portion to themselves under cover of section 18.

By failing to pay Lapidus from the proceeds of the recovery, Wasco breached the contingency fee agreement, the terms of which were fully consistent with section 18. The city thereby became liable to Lapidus in an amount equal to the unpaid fees. The city argues that section 18 applies to a contractual obligation voluntarily undertaken by a municipality even if reduced to a judgment because of its breach, relying on authority denying payment on a judgment to a contractor where the municipality's expenses for the year in which the liability was incurred exceeded its revenues. (E.g.,

*Arthur v. City of Petaluma* (1917) 175 Cal. 216, 223 [165 P. 698].) However, this is true only if the contractual obligation that the city assumed would violate the constitutional restriction on the assumption that the city observed its terms. In such a situation, "[e]ven though at the time of making his contract there are funds in the treasury sufficient to meet the amount of his claim, [the party contracting with the municipality] is charged with notice that these funds are liable to be paid out for municipal expenditures before his contract can mature into a claim against the city . . .." (*Weaver v. San Francisco* (1896) 111 Cal. 319, 325–326 [43 P. 972]; *Compton Community College etc. Teachers v. Compton Community College Dist., supra,* 165 Cal.App.3d at p. 89.)

In the present case, there could be no violation of section 18 so long as Wasco observed its obligation under the contingency fee agreement to pay Lapidus one third of the recovery. Lapidus was hardly on notice that Wasco might disregard its valid contractual commitments. The city may not escape its obligations by breaching an otherwise lawful contract. Notwithstanding section 18, "the city may become obligated to pay damages for its breach of contract . . .." (*Bilardi Constr., Inc. v. Spencer* (1970) 6 Cal.App.3d 771, 778–779 [86 Cal.Rptr. 406].) Section 18 provides no excuse for avoiding an obligation which, if performed in accordance with its terms, would not have violated the constitutional restriction. (See also *Title Guarantee etc. Co. v. Long Beach* (1935) 4 Cal.2d 56, 59 [47 P.2d 472] [where city exhausted available funds from bond issue in years subsequent to year in which liability arose, "there is no justification in principle or authority for the application of the constitutional provision. There were, in fact, ample funds provided for the very obligation incurred, and the subsequent expenditure of those funds in their entirety, either for harbor work or for other purposes, cannot be permitted to defeat the rights of the creditor. . . . [T]he moneys thus expended are considered as still in the treasury so far as the inhibitions of article XI, section 18, are concerned."].)

### Disposition

The judgment is affirmed.

McGuiness, P. J., and Parrilli, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 14, 2004.