[L. A. No. 25650.   In Bank.   May 13, 1960.]

THE CITY OF REDONDO BEACH et al., Respondents, v. THE TAXPAYERS, PROPERTY OWNERS, CITIZENS and ELECTORS OF THE CITY OF REDONDO BEACH et al., Appellants.

128

Denison, Dietrich & Anderson and Walter N. Anderson for Appellants.

Frank L. Perry, City Attorney, MacFaden & Hall, William E. MacFaden, James M. Hall and Herman F. Selvin for Respondents.

WHITE, J.—This is an appeal by defendants after the trial court rendered judgment for plaintiffs in an action brought to validate a proposed bond issue. (Gov. Code, §§ 54580-54586.)

In 1956, as the culmination of a 40-year effort to obtain harbor facilities, plaintiff city (hereinafter referred to as plaintiff) covenanted with the federal government to construct a small boat harbor in return for an agreement by the United States to install the necessary moles and breakwaters which would become an integral part of the proposed harbor. The United States has fulfilled its commitment at a cost of over $5,000,000. Planning of the facilities to be constructed by the plaintiff resulted in a proposed project that would entail expenditures of approximately $9,000,000, to be financed by

the issuance and sale of the bonds under attack herein. To this end the city council adopted ordinance 1674 which set out the basic terms of the proposed issue and provided for its submission to the plaintiff's electors.

The bonds were to be repaid from the following sources: (a) from the operating revenues of the harbor which was to be constructed with the bond funds; (b) from net revenues from hydrocarbon substances from the city's tidelands, which revenues were already dedicated to harbor purposes, and (c) from that part of the sales, use and license tax revenues from the harbor area as would represent the increase in such revenues resulting from the additional business in that area attributable to the construction of the harbor project. The enabling ordinance specifically provided that the bonds were not to be payable from any other funds of plaintiff nor were they secured by any property of plaintiff other than the proposed construction.

The election held to pass upon the bonds resulted in a favorable vote of more than 86 per cent of those voting, whereupon the city council adopted ordinance 1682 which provided for the issuance of the bonds and fully set forth the terms and conditions thereof. In addition to the limitations set out in ordinance 1674, it was provided that the bonds were not issued on the credit of the city nor were they a charge on the general funds thereof. The bondholders were not given the right to compel the city to impose or continue any taxes except those sales, use and license taxes specifically made liable thereon. The plaintiff then initiated this action pursuant to sections 54580-54586 of the Government Code (constituting a portion of the Revenue Bond Law of 1941, Stats. 1941, ch. 965, Gov. Code, §§ 54300-54700) to have the proposed bond issue validated.

The judgment of the trial court validated the bonds in their entirety. From such adverse judgment defendants prosecute this appeal. It is their principal contention that the bond issue is violative of section 18 of article XI of the state Constitution and section 19.11 of article XIX of plaintiff's charter, these sections being substantially identical limitations on the extent to which the city may validly incur a bonded indebtedness. It is also contended that the bond issue is in violation of the following: The Revenue Bond Law of 1941 (Gov. Code, §§ 54300-54700); the provisions of the grant of the tidelands to plaintiff from the state and the plaintiff's charter, article XXV, pertaining thereto; section 20.2, sub-

division D of article XIX of plaintiff's charter creating a public building fund, and the principles of law forbidding a delegation of public power to the bondholders.

We turn first to the argument that the bond issue violates the constitutional and charter debt limitation provisions. Article XI, section 18 of the Constitution provides as follows: "No county, city . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at any election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof, on or before maturity, which shall not exceed 40 years from the time of contracting the same. . . ." It is asserted that the election required by this constitutional provision was not held and that the issue·did not contain provision for the annual tax required therein.

It is well recognized that certain municipal bond issues are valid without fulfilling the requirements of the above quoted debt limitation provision. ▮▮▮ The purpose of the constitutional protection of article XI, section 18, is to safeguard the general funds and property of a municipality from a situation whereby the holders of an issue of bonds could, at some time after the issuance thereof, force an unconsented-to increase in the taxes of, or foreclose on the general assets and property of the issuing public corporation to obtain payment of the principal or interest thereon. To this end each general obligation bond issue is required to contain provision for a tax capable of insuring its repayment and that tax, together with the purpose for which the bonds were being issued, must secure the approval of two-thirds of the voting electors. In conformity with this purpose the courts of most jurisdictions in this country have long recognized that a bond issue that by its terms could never become a charge on the general funds or property of a municipality need not be subjected to the requirements of submission to the electorate or an annual tax. ▮▮ This is the judicially created so-called "special fund" doctrine under which "it is settled in California and recognized in almost all of the other states that, as a general rule, a constitutional provision such as section 18 of article

XI is not violated by revenue bonds or other obligations which are payable *solely from a special fund, provided the governmental body is not liable to maintain the special fund out of its general funds, or by tax levies,* should the special fund prove insufficient . . . such an obligation is not considered to be an indebtedness or liability of the political subdivision . . . issuing the bonds, within the meaning of the constitutional limitation.'' (*City of Oxnard* v. *Dale,* 45 Cal.2d 729, 733 [290 P.2d 859] ; emphasis added.)

Plaintiff, however, asserts the applicability of this doctrine to the case at bar because the sales, use and license tax revenues, the harbor revenues and the profits from the exploitation of the tidelands which are to be used to repay the indebtedness constitute, it argues, a ''special fund'' within the meaning of the above quoted language. ▇ There can be little doubt that the harbor revenues and tidelands proceeds constitute such special funds. (*City of Palm Springs* v. *Ringwald,* 52 Cal.2d 620, 625 [342 P.2d 898] ; *City of Oxnard* v. *Dale, supra,* 45 Cal.2d 729, 733.) ▇ It has been held, however, that sales, use and license taxes ordinarily constitute the general revenues of a public corporation and may not, therefore, be used to repay a bond issue without having first satisfied the limiting requirements of the constitutional debt limitation provision. (*City of Palm Springs* v. *Ringwald, supra,* 52 Cal.2d 620, 624.) Plaintiff attempts to distinguish this case from the Ringwald case in that the sales, use and license taxes to be applied to the bonded debt in the instant case are to be only those collected from the area of the project to be constructed, and only those attributable to the increase in business due to the construction of the harbor. In the Ringwald case the bond issue was proposed to construct municipal parking lots ; the bonds were to be repaid from the revenues from the parking lots and from the city's sales and use tax revenues. Thus, plaintiff argues, the taxes involved in the case now engaging our attention are still funds arising from the project while those in the Ringwald case were the general sales and use tax revenues without qualification.

▇ Plaintiff seeks to measure the sales, use and license taxes attributable to the increased business due to the construction of the harbor as all such revenues from the harbor area over and above those collected therein in the fiscal year 1957-1958. While this formula renders the amount of the tax funds to be applied to the bond repayment each year easily

ascertainable, we are persuaded, despite an adverse finding by the trial court, that the asserted relationship of such funds to the harbor project during the entire life of the bonds is too indirect and intangible to effectively remove what are ordinarily general funds from that category.

Plaintiff also seeks to bring this bond issue within the grace of the special fund doctrine under a section of the Government Code enacted shortly after the decision in the Ringwald case. Section 43401 of that code, adopted in 1959, provides that "All moneys received from sales and use taxes shall be paid into the General Fund, or into such special fund or funds for such purpose or purposes as shall be established by ordinance." (Stats. 1959, ch. 767, § 1.) Plaintiff contends that since the enactment of this statute sales tax revenues may properly be considered a special fund within the meaning of the special fund doctrine. To this contention it may be answered that the special fund doctrine is a judicial interpretation of article XI, section 18 of the Constitution. As such, it may not be changed by legislative fiat. In the Ringwald case we held, in effect, that the general funds within the purview of the aforesaid constitutional provision included sales tax revenues. If the Legislature could change the definition of general funds under section 18 of article XI at its pleasure it could as easily exclude ad valorem taxes from a city's general funds thereby completely negating the effect of the debt limitation provision.

We are persuaded that Government Code section 43401 was designed to grant authority to *general law cities* (of which plaintiff is not one), to use sales tax revenues to repay bond indebtednesses *after* the constitutional requirements were met. In the absence of this statute general law cities would not have such authority for certain types of bonds. (*City of Palm Springs* v. *Ringwald, supra,* 52 Cal.2d 620, 623.)

It is concluded, therefore, that the bonds here under consideration are essentially general obligation bonds subject to the requirements of article XI, section 18 of the state Constitution.

Defendants contend that the election required by section 18 of article XI of the Constitution was not held. They assert that the election that was held was ineffective to secure compliance with the constitutional debt limitation provision because it was not specifically called thereunder, but pur-

ported to be called under the provisions of the Revenue Bond Law of 1941 which requires only a simple majority to validate bonds issued under its authority. To us it seems manifest, however, that as long as compliance with the substantive provisions of the Constitution was had it is immaterial whether or not the election was specifically called thereunder. (*City of San Diego* v. *Potter*, 153 Cal. 288, 295 [95 P. 146].) As the election held in the case with which we are here concerned resulted in a vote favorable to the issuance of the bonds of 86 per cent it would appear that the constitutional requirement of a two-thirds vote was, for all intents and purposes, fulfilled. Furthermore, an examination of the aforementioned ordinance calling the bond election (ordinance 1674) and the proposition actually submitted to the voters discloses that the election was not noticed under the Revenue Bond Law of 1941. The proposition submitted to the voters merely provided that the bonds would be issued if the proposition secured the ''required'' number of votes—it did not specify either a simple majority or a two-thirds vote, and it did not specify the authority under which the bonds would be issued. Defendants' position on this issue does not appear, therefore, to be well taken.

Defendants next argue that the debt limitation provision was violated in that the bond issue failed to contain provision for an annual tax with which to pay the interest and principal of the debt.

It is apparent, however, that the very taxes that bring the issuance of these bonds under the debt limitation provision, namely, the sales, use and license taxes, themselves constitute the annual tax contemplated by the constitutional limitation. In *City of Walnut Creek* v. *Silveira*, 47 Cal.2d 804, 813 [306 P.2d 453], we upheld the constitutionality of the Limited Obligation Bond Law of 1955 (Stats. 1955, ch. 1847, Gov. Code, §§ 43648-43702) against an attack based on article XI, section 18 of the Constitution. The statute provided the authority for qualifying cities to issue bonds for certain municipal purposes and repay them from sales and use tax revenues. Each issue was made subject to the prior approval of two-thirds of the electorate of the issuing municipality, but the statute contained no mention of a requirement of an annual tax to assure repayment of the bonds. In declaring the validity of the statute we recognized that if a bond issue is made payable solely out of a *specific* and *designated* portion of the gen-

eral funds of the city issuing the same, and may never constitute a greater liability thereon, that specific and designated portion of the general funds constitutes the annual tax that is required by the constitutional debt limitation. If, as we have seen, that limitation is designed to insure that the funds that will be used to pay the indebtedness are provided in or concurrent with the original issue and subjected to the approval of two-thirds of the electorate, and that the taxpayers of the city will never be subjected to further or greater liability thereon, then the validity of the bond issue in the case at bar becomes clear. The plaintiff's voters have approved the use of the enumerated sales, use and license taxes along with the harbor and tidelands revenues to repay the indebtedness, and plaintiff can never be subjected to additional liability thereon, either directly or indirectly. If the bondholders must look to the tax provided in the bond issue, and may not have recourse to other tax revenues of the issuing municipality then certainly the constitutional requirement has been met.

This conclusion is further borne out by our recent decision in *City of Palm Springs* v. *Ringwald, supra,* 52 Cal.2d 620, wherein, as was hereinbefore stated, we invalidated a proposed bond issue that was designed to raise funds with which the plaintiff city could construct municipal parking lots and meters. The indebtedness was to be repaid from revenue derived from the project and from the sales and use taxes of the city. The city was otherwise specifically not liable on the issue, nor were its general funds or property. We held the proposed issue to be a general obligation bond issue due to the employment of sales and use tax funds for the repayment thereof and invalidated the bond issue *only because it had not been submitted for the approval of two-thirds of the electorate* as was required by article XI, section 18 of the Constitution. We therein said at page 627: "[Section 18 of article XI] simply provides that the legislative body may not encumber the general funds of the city beyond the year's income without first obtaining the consent of two-thirds of the electorate." By failing to invalidate the issue for lack of an annual tax as well as for the failure to submit it to the electorate, we impliedly recognized that a specific limitation on the general funds to be used for the repayment of the bond issue, which was present in the Ringwald case, itself satisfies the annual tax requirement.

The proposed issue with which we are here concerned vio-

lates, therefore, neither the election nor the annual tax requirements of section 18 of article XI of the Constitution.

Defendants further contend that the proposed bond issue violates the maturity date provision of the debt limitation section of the plaintiff's charter. As stated above, that provision, section 19.11 of article XIX, is substantially identical to article XI, section 18 of the state Constitution. The only difference is that the Constitution requires a general obligation bond to bear a maturity date of less than 40 years from the date of issuance while the charter adopts a 20-year rule. The bond issue involved herein has a maturity date of 39 years, 6 months from the date of issuance.

As we have herein pointed out, the bonds sought to be issued by plaintiff are general obligation bonds due to the inclusion of certain general funds in the revenues from which they are to be repaid. Being general obligation bonds they are subject to the requirements of the debt limitation provisions of the Constitution and charter, including the rules relating to dates of maturity. The plaintiff's charter has forbidden the encumbrance of the general funds of that municipality with a bonded indebtedness for a longer period than 20 years, and we are bound to apply that limitation to the bonds herein involved. Consequently, the stated maturity date of the bonds of 39 years and 6 months is invalid and may not be adhered to by plaintiff. Defendants do not seriously assert, however, that such defect requires an invalidation of the bond issue.

The time of repayment of a bond obligation is not an integral part of the proposition to be submitted to the electorate and need not be stated therein but may be set by the city council at any time either before or after the bond issue gains the requisite electoral approval. (*Clark* v. *Los Angeles*, 160 Cal. 30, 42-43 [116 P. 722].) Having been contained in the proposition approved by the voters a maturity date may not, of course, be arbitrarily changed thereafter by action of the city council. But, being mere surplusage in that proposition, it may be amended by the city council where that action is necessary to effectuate the purpose behind the bond issue and where the substantive rights of the voters would not be prejudiced thereby, as in the case at bar. (*Board of Supervisors* v. *Rechenmacher*, 105 Cal.App.2d 39, 43-44 [232 P.2d 514] ; *City of Redding* v. *Holland*, 75 Cal.App.2d 178, 181 [170 P.2d 132].) The city council may, therefore, without further recourse to judicial action, conform the terms of the

bond issue involved herein to the mandate of the debt limitation provision of the plaintiff's charter.

It is next argued that the bonds are violative of sections 54478 and 54430 of the Government Code, which sections constitute part of the aforementioned Revenue Bond Law of 1941. (Gov. Code, §§ 54300-54700.) Section 54478 provides that no bonds issued under the provisions of the Revenue Bond Law of 1941 may be repaid with revenue derived from taxes; section 54430 forbids the holder of such bonds from compelling the exercise of the taxing power of the municipality. As the bond issue sought by plaintiff herein is to be repaid partially from sales, use and license tax funds, and since the bondholders are given the right to compel the plaintiff to retain these taxes it is clear that the bonds do not conform to the terms of the aforementioned statutes. Because plaintiff has adopted certain sections of this act[1] it is argued that it is bound by the limitations contained therein. Despite its employment of certain powers authorized therein, however, plaintiff need not conform to the limitations of the Revenue Bond Law of 1941 in order to validly issue bonds for municipal purposes.

It must be remembered that plaintiff is a charter city and, therefore, has plenary powers with respect to municipal affairs not expressly forbidden to it by the state Constitution or the terms of the charter. (*West Coast Advertising Co.* v. *City & County of San Francisco,* 14 Cal.2d 516, 522 [95 P.2d 138].) Taxes and bond issues for municipal purposes are clearly municipal affairs within the meaning of the doctrine of the case just cited. (*City of Grass Valley* v. *Walkinshaw,* 34 Cal.2d 595, 599-600 [212 P.2d 894].) It is not contended that plaintiff's charter limited its general right to issue bonds so as to exclude those questioned herein. Thus, plaintiff had the authority under its charter to issue bonds to obtain funds to construct the small boat harbor and did not need the grant of power to accomplish that end conferred by the Revenue Bond Law of 1941. That law granted certain powers and procedures, however, which plaintiff was free to adopt and employ in addition to those it enjoyed by virtue of its status as a charter city without it thereby being bound by the restrictions contained therein. ("The powers conferred by this chapter are in addition to, *and the limitations*

[1] It filed this validation action thereunder.

*imposed by this chapter do not affect, the powers conferred by any other law."* Gov. Code, § 54302. Emphasis. added.) As plaintiff was not bound by the limitations contained in the Revenue Bond Law of 1941, the bonds are not invalid for failing to conform thereto.

Defendants next complain that the use of the tidelands hydrocarbon revenues to repay the bonds will violate the terms of the grant of those tidelands from the state to the plaintiff and the terms of plaintiff's charter, article XXV. Under these provisions the tidelands revenues were to be used for the cost and expenses of establishing, improving and conducting a harbor in plaintiff city without further cost to the state. Defendants argue that a small boat harbor for recreational purposes is too far removed from commerce and navigation to constitute a "harbor" within the meaning of the aforesaid grant from the state and the article contained in plaintiff's charter. This contention cannot be sustained. A small boat harbor can be a valid component of a complete harbor, and also a useful incident thereto. Its construction is authorized within the terms of the mandate to construct a harbor. (*Ventura Port District* v. *Taxpayers, Property Owners, etc. of Ventura Port Dist.*, 53 Cal.2d 227, 229-232 [1 Cal. Rptr. 169, 347 P.2d 305], and cases therein cited.)

Finally, defendants urge that the pledge of the sales, use and license taxes and the covenant to maintain these taxes constitute an unlawful delegation of municipal power to the bondholders, and that the use of the harbor revenues violates a provision of the plaintiff's charter which requires the rental from all city property to be placed into a public building fund (Redondo Beach Charter, art. XIX, § 20.2, subd. D). Neither contention is tenable. The city could not eliminate the sales, use and license taxes pledged to the repayment of the bonds even without a specific provision thereon, for to so act would be an impairment of the bondholders' contractual rights. (*May* v. *Board of Directors*, 34 Cal.2d 125, 128-129 [208 P.2d 661].) Also, the charter building fund provision is no bar to the use of the harbor revenues to repay the bonds, for such use is an expenditure for the construction of municipal property within the meaning of the building fund provision.

We therefore conclude that the bond issue is valid in every particular except as to its maturity date and as to that issue the council of plaintiff city, for the reasons heretofore stated,

is authorized to conform the bonds to the 20-year maturity date limit provided for in its charter.

For the foregoing reasons, the judgment of the trial court validating the bond issue here in question should be and is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.