[Civ. No. 30563.   Second Dist., Div. Four.   Oct. 19, 1966.]

CITY OF SANTA MONICA, Petitioner, v. KENNETH O. GRUBB, as City Clerk, etc., Respondent.

Robert G. Cockins, City Attorney, O'Melveny & Myers, Ray H. Lindman, James Warren Beebe, James D. Lorenz, Jr., and Frederic P. Sutherland for Petitioner.

David M. Durst for Respondent.

CHANTRY, J. pro tem.*—This is an application for a writ of mandate by the City of Santa Monica to compel the city clerk of Santa Monica to publish a notice inviting sealed proposals for the purchase of water revenue bonds as directed by a resolution of the Santa Monica City Council.[1] The clerk

---

*Assigned by the Chairman of the Judicial Council.

[1]The words "city" and "city council" refer to the City of Santa Monica and the City Council of Santa Monica, respectively, unless otherwise indicated.

refuses to publish the notice on the asserted ground the proposed issuance of the revenue bonds is invalid as being in excess of the powers of the City of Santa Monica. The matter is submitted on a general demurrer, return, and answer to the petition.

The return and answer place in issue only the validity of the proceedings taken by the city council for the issuance and sale of the water revenue bonds.

These are the facts which generated this writ application: Petitioner City of Santa Monica is a municipal corporation organized under the laws and Constitution of the State of California and freeholders' charter adopted November 5, 1946, under sections 6 and 8 of article XI of the state Constitution.

The City of Santa Monica has heretofore obtained water for public, domestic, and industrial use by pumping water from wells owned by the city and situated in the City of Los Angeles. This water is of a type which has caused substantial physical deterioration to the water mains and hydrants, requiring the city to expend large amounts of money in maintaining and rehabilitating such water mains and hydrants.

In order to alleviate this situation, the city has formulated a plan for financing the construction of a water treatment plant to treat water chemically so as to prevent further physical deterioration of the water system.

The proposed water treatment plant is to be constructed on land presently owned by the City of Santa Monica and located in the City of Los Angeles.

In furtherance of said plan the city council on December 20, 1965, adopted an ordinance authorizing the city council, when public interest and necessity required, to issue and sell revenue bonds for water and airport purposes and providing that the procedures for the issuance and sale of revenue bonds for such purpose shall be the procedures set forth in the Revenue Bond Law of 1941, chapter 6, part 1, division 2, title 5 of the Government Code of the State of California commencing with section 54300 of said code, except that *no election* shall be held to authorize the issuance of said revenue bonds, and to that end, sections 54380 through 54387, inclusive, of the Government Code were not incorporated by said ordinance.[2] Said ordinance became effective on January 20, 1966.

---

[2]Sections 54380-54387, inclusive, set forth the procedure to be followed by the legislative body of the municipal corporation for the authoriza-

To cover the construction cost of the water treatment plant, the City Council of Santa Monica on March 15, 1966, adopted a resolution authorizing the issuance of water revenue bonds in the amount of $685,000, providing terms and conditions for the issuance, and, for the purpose of adequately securing the bonds, making certain covenants concerning the bonds and the water system. Among these covenants is the covenant to fix and maintain rates for water at least sufficient to pay interest and principal on the bonds, costs of operation and maintenance of the water system, and required credits to the reserve account.

On April 26, 1966, the city council by resolution directed the respondent, Kenneth O. Grubb, as clerk of the city, to publish notice inviting sealed proposals for the purchase of said "Water Revenue Bonds." The city clerk in writing refuses to publish said notice.

The respondent contends the city does not have the power to issue revenue bonds other than pursuant to the provisions of the Revenue Bond Law of 1941. That general statement is partitioned, for purposes of argument, into the following topical headings: (1) Generally municipal corporations do not have power to issue bonds unless expressly authorized to do so. (2) The city may not independently issue revenue bonds for construction beyond its boundaries. (3) Legislative enactments of general public or state concern are binding upon freehold charter cities. (4) Partial adoption of a general state law was improper. (5) The issuance of revenue bonds with binding covenants on future councils would be an unauthorized surrender of governmental powers if done other than pursuant to the express authority of the Revenue Bond Law of 1941. (6) Elections for the authorization of bonded indebtedness are traditional and should not be abrogated without the direct consent of the voters by charter amendment.

The pleadings present this question: Does the City of Santa Monica have the power under the city charter to adopt and utilize a part of the provisions of the Revenue Bond Law of 1941 for the purpose of issuing municipal bonds for municipal improvements without holding an election to authorize the bonds and being bound by the provisions and procedures contained in that enactment?

tion of such bonds. These sections cover the adoption and contents of the resolution for the issuance of the bonds, the publication or posting of the resolution, the payment and security of the bonds, the sale of the bonds, the submission to the voters of the issuing of bonds, and the quantum of vote required.

Sections 6 and 8 of article XI of the California Constitution extend the privilege of autonomous municipal home rule to charter cities organized in accordance with the provisions of the Constitution. (*City of Grass Valley* v. *Walkinshaw,* 34 Cal.2d 595, 598 [212 P.2d 894]; *West Coast Advertising Co.* v. *City & County of San Francisco,* 14 Cal.2d 516, 521 [95 P.2d 138].)

Section 6 of article XI provides in part: "Cities . . . organized under charters framed and adopted by authority of this Constitution are hereby empowered . . . to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws."

The City of Santa Monica has accepted the privilege of home rule, having adopted its charter pursuant to the constitutional provisions, and in broadly stating the powers of the city the charter employs language similar to section 6 of article XI, providing in section 400:

"Section 400. POWERS OF CITY. The City shall have the power to make and enforce all laws and regulations in respect to municipal affairs, subject only to such restrictions and limitations as may be provided in this Charter and in the Constitution of the State of California. It shall also have the power to exercise any and all rights, powers and privileges heretofore or hereafter established, granted or prescribed by any law of the State, by this Charter, or by other lawful authority, or which a municipal corporation might or could exercise under the Constitution of the State of California.

"The enumeration in this Charter of any particular power shall not be held to be exclusive of or any limitation upon, this general grant of power."

Thus, by express statement in its charter, Santa Monica possesses the broad general home rule power with respect to municipal affairs.

As section 6 of article XI was originally enacted, all general law and charter cities were subject to, and controlled by, general law. In 1896 this section was amended to provide city charters should be subject to, and controlled by, general laws, *except in municipal affairs.* This same constitutional section was again amended in 1914 to provide that cities by their charters may be authorized "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters

and in respect to other matters they shall be subject to and controlled by general law."

■ It is now established by a line of decisions of this state that "[1] A city which has availed itself of the provisions of the Constitution as amended in 1914 has full control over its municipal affairs, unaffected by general laws on the same subject matters. It has such control whether or not its charter specifically provides for the particular power sought to be exercised, so long as the power is exercised within the limitations or restrictions placed in the charter. ■ [2] The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; and the enumeration of powers does not constitute an exclusion or limitation. ■ [3] In respect to municipal affairs the city is not subject to general law except as the charter may provide. ■ A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not expressly stated in the charter is clearly indicated. The full exercise of the power is permitted, except as clearly and explicitly curtailed, and in construing a city's charter a restriction on the exercise of municipal power may not be implied. (*City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, 599 [212 P.2d 894].)" (*City of Roseville* v. *Terry*, 158 Cal.App.2d 75 [322 P.2d 44].)[3]

In *City of Redondo Beach* v. *Taxpayers, Property Owners etc. City of Redondo Beach*, 54 Cal.2d 126 [5 Cal.Rptr. 10, 352 P.2d 170], upholding the legality of bonds which failed to conform to the Revenue Bond Law of 1941, the court said (at p. 137) : "It must be remembered that plaintiff is a charter city and, therefore, has plenary powers with respect to municipal affairs not expressly forbidden to it by the state Constitution or the terms of the charter. (*West Coast Advertising Co.* v. *City & County of San Francisco*, 14 Cal.2d 516, 522 [95 P.2d 138].) Taxes and bond issues for municipal purposes are clearly municipal affairs within the meaning of the doctrine of the case just cited. (*City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, 599-600 [212 P.2d 894].) It is not

---

[3]The impact of general laws on the constitutional rights of a chartered city to make and enforce all laws and regulations in respect to "municipal affairs" is extensively discussed in the case of *In re Hubbard*, 62 Cal.2d 119 [41 Cal.Rptr. 393, 396 P.2d 809], and should be considered in connection with the general statements of power, privilege and autonomous rule conferred upon charter cities by the various decisions of the court.

contended that plaintiff's charter limited its general right to issue bonds so as to exclude those questioned herein. Thus, plaintiff had the authority under its charter to issue bonds to obtain funds to construct the small boat harbor and did not need the grant of power to accomplish that end conferred by the Revenue Bond Law of 1941. That law granted certain powers and procedures, however, which plaintiff was free to adopt and employ in addition to those it enjoyed by virtue of its status as a charter city without it thereby being bound by the restrictions contained therein."

In the case at bench it is respondent's contention that a municipality has no power to issue bonds unless the power has been expressly conferred, citing as authority 15 McQuillin on Municipal Corporations, §§ 43.18, 43.19; and 43 Am.Jur., Public Securities and Obligations, §§ 37, 38. ■ The law of California, as interpreted in the *Redondo Beach* case, is that a chartered city has such power, subject only to limitations imposed by the charter or the Constitution. Neither the state Constitution nor the city charter prohibits the issuance of bonds by the city. The city charter, by section 607, limits bonded indebtedness to 10 percent of the total assessed valuation of property within the city, and section 18 of article XI of the state Constitution forbids any city to incur any indebtedness or liability in any manner or for any purpose exceeding in one year the income revenue provided for that year without the assent of two-thirds of the qualified voters.

■ "It is settled in California and recognized in most other states that, as a general rule, a constitutional provision such as section 18 of article XI is not violated by revenue bonds or other obligations which are payable solely from a special fund, provided the governmental body is not liable to maintain the special fund out of its general funds, or by tax levies, should the special fund prove insufficient. [Citations.]" (*City of Oxnard* v. *Dale,* 45 Cal.2d 729, 733 [290 P.2d 859].)

■ In addition to the general power in the city charter to issue bonds for municipal purposes, the charter of the City of Santa Monica expressly empowers it to issue water bonds. Section 607 of the city charter provides:

"Section 607. Bonded Debt Limit. The bonded indebtedness of the City may not exceed the sum of ten (10%) percent of the total assessed valuation of property within the City, exclusive of any indebtedness that has been or may hereafter be incurred for the purpose of acquiring or establishing a system of waterworks for the supplying of water, or for the

purpose of constructing sewers or drains in the City, for which purposes a further indebtedness may be incurred by the issuance of bonds, subject only to the provisions of the State Constitution and of this Charter.''

The Revenue Bond Law of 1941 sets forth certain forms of procedure which the petitioner was free to employ without thereby being bound by the restrictions contained therein.

The Supreme Court of this state considered the partial use of certain sections of the Revenue Bond Law of 1941 in connection with the issuance of bonds by the City of Redondo Beach and said: ''Despite its employment of certain powers authorized therein, however, plaintiff need not conform to the limitations of the Revenue Bond Law of 1941 in order to validly issue bonds for municipal purposes.'' (*City of Redondo Beach v. Taxpayers, Property Owners etc. City of Redondo Beach,* 54 Cal.2d 126, 137 [5 Cal.Rptr. 10, 352 P.2d 170].)

It is manifest the City of Santa Monica has the power to issue revenue bonds or general obligation bonds for ''municipal affairs'' without recourse to the provisions of the Revenue Bond Law of 1941. ■ It follows that the city possessed the power to adopt a part of the provisions of that bond law without conforming to any of its limitations. We are of the opinion, on the authority of *Oxnard* and *Redondo,* the City of Santa Monica was acting within the scope of its municipal affairs, and pursuant to its home rule powers was authorized to adopt only a portion of the Revenue Bond Law of 1941 and eliminate therefrom the requirement for an election to authorize the issuance of revenue bonds payable solely from a special fund.

Section 401 of the city charter provides:

''The City shall have the power and may act pursuant to procedure established by any law of the State, unless a different procedure is established by ordinance.''

In *Ravettino* v. *City of San Diego,* 70 Cal.App.2d 37, 47 [160 P.2d 52], it was stated: ''In general, powers given to municipal corporations include the further power to employ such modes of procedure as are appropriate and necessary for their effective exercise. The delegation of power to municipal corporations, without providing the mode for carrying such power into effect, impliedly gives them the right to select lawful and reasonable means whereby that power is to be carried out. All doubts as to the propriety of means used in the exercise of an undoubted municipal power should be

resolved in favor of the municipality, where there is no abuse of power or discretion.''

In the instant case, the city council has adopted a procedural ordinance which incorporates by reference the major portion of the provisions of the Revenue Bond Law of 1941. These incorporated provisions clearly authorize all of the terms, conditions, and covenants of the resolution of issuance which was subsequently adopted by the city council. (City of Santa Monica No. 3421 [City Council Series].)

The City Council of Santa Monica possesses the power to make the bond covenants contained in the resolution of issuance either by adopting the covenant provisions contained in the Revenue Bond Law of 1941 or by independently drafting similar covenant provisions. The covenants correspond to like covenants approved in *City of Oxnard* v. *Dale,* 45 Cal.2d 729 [290 P.2d 859] ; *Department of Water & Power of the City of Los Angeles* v. *Vroman,* 218 Cal. 206 [22 P.2d 698] ; *Shelton* v. *City of Los Angeles,* 206 Cal. 544 [275 P. 421]. They require among other things punctual payment, completion of the improvement, discharge of all lawful claims, insurance of the enterprise, keeping of records and accounts, and assure adequate water revenues to make the payments of principal and interest on the bonds. Without these covenants the bonds would not be merchantable.

Where a city has the power to enter into a contractual obligation payable solely from revenues, it also has the power to make covenants, including a rate covenant, necessary to insure that the revenues will in the future be sufficient to meet the obligation. The fact that the power to make such covenants is necessarily implied and does not depend upon express statutory or charter authority is demonstrated by the following cases :

In *Marin Water & Power Co.* v. *Town of Sausalito* (1914) 168 Cal. 587 [143 P. 767], the facts show that the Town of Sausalito incurred a bonded indebtedness in 1908 for the construction of a waterworks system. Subsequently, the town entered into a contract with plaintiff water company for the purchase of water to be distributed through the waterworks system. The contract was for a term of 10 years and fixed the rate to be paid by the town for each thousand gallons of water used under the contract, and contained provisions for payment for not less than certain quantities of water per day. The contract also contained the following provision: ''. . . 'first party [Town of Sausalito] agrees that it will fix and establish

water rates to be paid by its customers in said municipality, which shall be sufficient to pay for all water supplied to it by second party [water company], and will cause to be collected and paid into said fund all said water rates, and it agrees that said fund shall be subject to the payment to second party of amounts to become due to second party hereunder, and should said fund in any month be insufficient to meet the payments then due second party hereunder, first party will at once cause to be transferred to said fund, from the general fund of first party, an amount sufficient to supply such deficiency.' '' (168 Cal. at p. 592.)

In reversing the trial court's judgment in favor of the Town of Sausalito, the California Supreme Court sustained the validity of the contract, including the above quoted provision.

In another case involving the acquisition of a waterworks system by a contract payable from revenues, a covenant was inserted to protect the revenues. (*Garrett* v. *Swanton*, 216 Cal. 220 [13 P.2d 725].) Although the contract was held invalid by the California Supreme Court on other grounds,[4] no attack was made on the convenant to maintain rates.

In *Denio* v. *City of Huntington Beach*, 22 Cal.2d 580 [140 P.2d 392, 149 A.L.R. 320], involving a contract employing an attorney for a term of years, the court stated: "It is our opinion, however, that the law is settled in California that a contract made by the council or other governing body of a municipality, which contract appears to have been fair, just, and reasonable at the time of its execution, and prompted by the necessities of the situation or in its nature advantageous to the municipality at the time it was entered into, is neither void nor voidable merely because some of its executory features may extend beyond the terms of office of the members of such body. In the absence of some other ground of avoidance, such a contract is binding upon the municipality and may not be summarily canceled by a successor council. [Citations.] The council of a municipal corporation is a continuing body and in legal contemplation remains the same council regardless of changes in its personnel [citations]. As was stated by the District Court of Appeal in *Pacific Finance Corp.* v. *City of Lynwood, supra* (at pp. 518-519 of 114 Cal.App. [300 P. 50, 1 P.2d 520]) : '. . . we know of no reason why a city, as well as an individual, should not be expected to keep faith with those

---

[4]Later overruled in *City of Oxnard* v. *Dale*, 45 Cal.2d 729 [290 P.2d 859].

with whom it contracts, or else respond in damages for its failure.' We conclude that the contract of employment here involved is valid, . . .'' (22 Cal.2d at pp. 590-591.)

In applying the ''fair, just and reasonable'' concept of the *Denio* case it should be noted that the instant case does not present an extreme example in which the present council of the City of Santa Monica is attempting to take away from future councils their entire legislative power to fix water rates from time to time as the public interest may dictate. Future councils will continue to have that power subject only to the obvious necessity (here expressed in a covenant to the bond-holders) that the minimum rates must be sufficient to pay the interest and principal on the bonds, the necessary operation and maintenance expenses, and other payments required by the resolution.

The inclusion of covenants in the Santa Monica revenue bond issue is justified under the established law of revenue bond issues as well as municipal contracts and is a necessary and proper means for carrying out its home rule charter powers.

The proceedings taken for the issuance and sale of the water revenue bonds are a valid exercise of Santa Monica's powers as a ''home rule'' charter city. Let a peremptory writ of mandate issue commanding respondent to fix the date for receiving bids and to publish the notice inviting sealed proposals for the purchase of $685,000 par value water revenue bonds of the City of Santa Monica.

Files, P. J., and Kingsley, J., concurred.