Peter WUNDERLICH et al., Plaintiffs-
Appellants,

and

Edward R. Joyce, Intervenor-Appellant,

v.

The CITY OF ST. LOUIS et al.,
Defendants-Respondents.

No. 58631.

Supreme Court of Missouri,
En Banc.

July 30, 1974.

Peter Wunderlich, St. Louis, pro se and for Marvin Reiss, d/b/a Gravois Bottery, Warwick Hotel Inc., and Henry Ruggeri, Jr., d/b/a Ruggeri's.

Edward R. Joyce, pro se.

Jack L. Koehr, City Counselor, Robert C. McNicholas and James J. Wilson, Associate City Counselors, St. Louis, Cullen Coil, Carson, Inglish, Monaco & Coil, Jefferson City, for respondents.

Thompson & Mitchell, James M. Douglas, William G. Guerri, John B. Crosby, St. Louis, for amici curiae.

DONNELLY, Chief Justice.

This is an action which seeks to have a funding arrangement conceived for the purpose of financing the building of a convention center facility in the City of St. Louis declared illegal and void. The trial court denied relief and an appeal was taken to this Court.

On November 7, 1972, the following proposition was submitted to the qualified electors in the City of St. Louis:

"Proposition to issue revenue and supported bonds of the City of St. Louis, Missouri, to the amount of Twenty-Five Million Dollars ($25,000,000) for the purpose of constructing and erecting a Convention, Exhibition and Community Center Building in the area bounded by Fourth, Twelfth, Delmar and Cole to be used for the holding of public meetings, gatherings and conventions for discussions of public questions, and to provide a suitable meeting and exhibition place for education, art, science, moral, musical, industrial, commercial, labor and other purposes, the acquiring of land therefor, if necessary, and the deposit of $900,000 in a reserve fund; the cost of the operation and maintenance of said Convention Center is to be borne out of the general revenues of the City of St. Louis and the gross revenues from the operation of said Con-

vention Center shall be used exclusively for the payment of the principal and interest on said Convention Center Revenue Bonds, Receipts of the Convention and Tourism Tax and receipts from the Merchants and Manufacturers Tax shall be paid into a Convention, Exhibition and Community Center Building Revenue Fund to provide additional monies for bond service and reserve requirements and said Convention and Tourism Tax Levy and said Merchants and Manufacturers Tax levy shall be imposed and not reduced or diminished below an amount sufficient to meet the debt service and reserve requirements."

*The parties stipulate as follows:*

"8. That Ordinance No. 56442 declared the result of the Special Election, as set forth in Ordinance No. 56262 to be as follows:

"The number of votes cast in favor of the proposition (Convention, Exhibition and Community Center Building) was 96,679; and

"That the number of votes cast against said proposition was 31,080; and,

"that the percentage of votes in favor of the Proposition is 75.67 percent of the total votes cast at said Election.

"9. That pursuant to the hereinabove Ordinances the defendants intend to execute, sell and issue bonds as set forth in Ordinance No. 56575.

"10. The payment for cost of operation and maintenance of said convention center will come out of the general revenue of the City of St. Louis.

"11. Section One of Ordinance No. 56575 provides that the term of the bonds is thirty (30) years.

"12. Ordinance No. 56575 does not provide for the levying of an annual tax on all taxable tangible property for the purpose of paying off the principal and interest on the bonds to be issued as set forth therein.

"13. Section 4 of Ordinance No. 56575 provides that 'no bond issued hereunder shall constitute an indebtedness of said City within the meaning of any constitutional or statutory restriction limitation, or provision, and the full taxing power of said City is not pledged to the payment of any of the bonds authorized hereby, either as to principal or interest.'

"14. That the authorized debt limit of the City of St. Louis is $168,497,254 and the bonded indebtedness of the City of St. Louis is $109,508,000.

"15. The bonds are to be payable, both principal and interest, solely from the Convention, Exhibition, and Community Building Revenue Fund, consisting of:

"(a) the gross revenues derived from the operation of the Convention Center;

"(b) the receipts from the Convention and Tourism Tax under Ordinance 56263;

"(c) the receipts from the Merchant and Manufacturers Tax under Ordinance 56244."

The essential question in this case is whether this arrangement for financing the Convention Center violates Mo.Const. Art. VI, § 26(a) and (f), V.A.M.S.

We make the following preliminary observations:

(1) In the Constitution of 1945, provision is made for the issuance of "revenue bonds," which are not paid directly or indirectly by resort to taxation. Mo.Const. Art. VI, § 27 reads as follows:

"Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may issue and sell its negotiable interest bearing revenue bonds for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any of the following: (1) revenue producing water, gas or electric light works, heating or power plants; (2) plants to be leased or otherwise disposed of pursuant to law to private persons or corporations for manufacturing and industrial development purposes, including the real estate, buildings, fixtures and machinery; or (3) airports; to be owned exclusively by the municipality, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of the utility or the lease of the plant."

Limitations are, however, imposed upon the issuance of *general* obligation bonds, which are payable by utilization of the full taxing power of the issuing entity.

Mo.Const. Art. VI, § 26(a) reads as follows:

"No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution."

Mo.Const. Art. VI, § 26(b) reads as follows:

"Any county, city, incorporated town or village or other political corporation or subdivision of the state, by vote of two-thirds of the qualified electors thereof voting thereon, may become indebted in an amount not to exceed five percent of the value of taxable tangible property therein as shown by the last completed assessment for state or county purposes, except that a school district by a vote of two-thirds of the qualified electors voting thereon may become indebted in an amount not to exceed ten percent of the value of such taxable tangible property."

(2) In Missouri, we have historically recognized the "special fund doctrine," which holds that an indebtedness of a city payable only out of income derived from the property purchased or built is not a debt within the limitations of Mo.Const. Art. VI, § 26. Grossman v. Public Water Supply District No. One, 339 Mo. 344, 96 S.W.2d 701 (banc 1936).

The "special fund doctrine" may, however, be utilized only if the obligation incurred is payable *solely* from the special fund and not, directly or indirectly, from any form of taxation. Scroggs v. Kansas City, 499 S.W.2d 500 (Mo.1973).

We believe the funding arrangement creates a present indebtedness and obligates the City to impose taxes in succeeding years to satisfy that indebtedness. It is not contingent. It is undisputed that the building of the Convention Center in St. Louis is to be funded from revenues derived from the use of the building *and* with receipts from a Convention and Tourism Tax and a Merchants and Manufacturers Tax. The holding in *Scroggs* applies, and the limitations of Mo.Const. Art. VI, § 26(a) and (b) must be imposed.

Appellants do not assert that the funding arrangement fails to meet the requirements of Mo.Const. Art. VI, § 26(b). The proposed indebtedness does not exceed the allowable limits *and* the proposition was approved "by a vote of two-thirds of the qualified electors voting thereon." The thrust of appellants' contentions is that the proposition does not pass muster because it "makes no provision for the collection of an annual tax on all tangible taxable property and calls for the debt to be retired in thirty years, all in violation of Article VI, Section 26(f) of the Missouri Constitution." Mo.Const. Art. VI, § 26(f) reads as follows:

"Before incurring any indebtedness every county, city, incorporated town or village, school district, or other political corporation or subdivision of the state shall provide for the collection of an annual tax on all taxable tangible property therein sufficient to pay the interest and principal of the indebtedness as they fall due, and to retire the same within twenty years from the date contracted."

It is evident that the bonds involved here are not "revenue bonds" under Mo. Const. art. VI, § 27; and that they are not *general* obligation bonds, because the full taxing power of the City is not pledged to their payment. They are more in the nature of *limited* obligation bonds because they are not intended to expose the total taxable resources of the City to liability. In this connection, the case of City of Redondo Beach v. Taxpayers, Property Owners, Citizens and Electors, 54 Cal.2d 126, 5 Cal.Rptr. 10, 352 P.2d 170 (banc 1960), is of considerable interest. In that case, the proposed issuance of bonds to raise funds for construction of a harbor, repayable from harbor tidelands revenues and from increase in sales, use and license taxes from the area of the project, was in question, and the Supreme Court of California said:

"Defendants next argue that the debt limitation provision was violated in that the bond issue failed to contain provision for an annual tax with which to pay the interest and principal of the debt.

"It is apparent, however, that the very taxes that bring the issuance of these bonds under the debt limitation provision, namely, the sales, use and license taxes, themselves constitute the annual tax contemplated by the constitutional limitation. In City of Walnut Creek v. Silveira, 47 Cal.2d 804, 813, 306 P.2d 453, we upheld the constitutionality of the Limited Obligation Bond Law of 1955 (Stats.1955, ch. 1847, Gov.Code, §§ 43648–43702) against an attack based on article XI, section 18 of the Constitution. The statute provided the authority for qualifying cities to issue bonds for certain municipal purposes and repay them from sales and use tax revenues. Each

issue was made subject to the prior approval of two-thirds of the electorate of the issuing municipality, but the statute contained no mention of a requirement of an annual tax to assure repayment of the bonds. In declaring the validity of the statute we recognized that if a bond issue is made payable solely out of a *specific* and *designated* portion of the general funds of the city issuing the same, and may never constitute a greater liability thereon, that specific and designated portion of the general funds constitutes the annual tax that is required by the constitutional debt limitation. If, as we have seen, that limitation is designed to insure that the funds that will be used to pay the indebtedness are provided in or concurrent with the original issue and subjected to the approval of two-thirds of the electorate, and that the taxpayers of the city will never be subjected to further or greater liability thereon, then the validity of the bond issue in the case at bar becomes clear. The plaintiff's voters have approved the use of the enumerated sales, use and license taxes along with the harbor and tidelands revenues to repay the indebtedness, and plaintiff can never be subjected to additional liability thereon, either directly or indirectly. If the bondholders must look to the tax provided in the bond issue, and may not have recourse to other tax revenues of the issuing municipality then certainly the constitutional requirement has been met.

"This conclusion is further borne out by our recent decision in City of Palm Springs v. Ringwald, supra, 52 Cal.2d 620, 342 P.2d 898, wherein, as was hereinbefore stated, we invalidated a proposed bond issue that was designed to raise funds with which the plaintiff city could construct municipal parking lots and meters. The indebtedness was to be repaid from revenue derived from the project and from the sales and use taxes of the city. The city was otherwise specifically not liable on the issue, nor were

its general funds or property. We held the proposed issue to be a general obligation bond issue due to the employment of sales and use tax funds for the repayment thereof and invalidated the bond issue *only because it had not been submitted for the approval of two-thirds of the electorate* as was required by article XI, section 18 of the Constitution. We therein said at page 627 of 52 Cal.2d, at page 903 of 342 P.2d: '[Section 18 of article XI] simply provides that the legislative body may not encumber the general funds of the city beyond the year's income without first obtaining the consent of two thirds of the electorate.' By failing to invalidate the issue for lack of an annual tax as well as for the failure to submit it to the electorate, we impliedly recognized that a specific limitation on the general funds to be used for the repayment of the bond issue, which was present in the Ringwald case, itself satisfies the annual tax requirement." 5 Cal.Rptr. at 15–16, 352 P.2d at 175–176.

■ We recognize that Mo.Const. Art. VI, § 26(f) is broader than California's requirement of an "annual tax" (as was in Art. X, § 12 of the Missouri Constitution of 1875) because Missouri now requires "an annual tax on all taxable tangible property." We agree with the California Supreme Court, however, "that a specific limitation on the general funds to be used for the repayment of the bond issue . . . itself satisfies the annual tax requirement." We are of the opinion that *limited* obligation bonds funded as in this case from enumerated taxes, and approved by a vote of two-thirds of the qualified electors voting on the proposition authorizing them, are within the powers of the City of St. Louis (Mo.Const. Art. VI, § 19(a) ), and are within Mo.Const. Art. VI, § 26(f). We do believe that the bonds must be retired within twenty years from the date contracted. We do not believe the prior failure of the City "to so provide had the effect to vitiate the bonds." State ex

rel. City of Carthage v. Gordon, 217 Mo. 103, 119, 116 S.W. 1099, 1103 (banc 1909).

 Appellants contend the proposition submitted was improper "because it constituted a multiple submission requiring just one 'yes' or 'no' vote, and because it described the bonds involved as 'revenue bonds.'" We do not agree. We believe "the several parts of the proposition are plainly and naturally so related or connected that, united, they form in fact but one united, rounded whole, and may be logically viewed as parts or aspects of a single plan." State ex rel. Phelps County v. Holman, 461 S.W.2d 689, 691 (Mo. banc 1971). We do not believe the electors were misled. They were advised that the questions presented involved the building of the Center and its financing by utilization of revenues produced by use of the building and by taxation specifically described. The contention is ruled against appellants.

Appellants also contend that "the financing scheme embodied in the aforesaid proposition is invalid because the pledge of certain taxes contained in the proposition is subject to repeal or change at any time at the will of the board of aldermen." In *Gordon* supra, this Court held that such a contingency can be resolved by mandamus.

Intervenor-appellant contends that the aforesaid proposition and ordinances relating thereto constitute an amendment to the City Charter, and particularly Article XVI, §§ 2 and 3 thereof, in that they would "allow the taxes heretofore described to be credited to the Convention Center Fund without the annual recommendation of the Board of Estimate and Apportionment and without the annual appropriation of the Board of Aldermen." The contention is ruled against intervenor-appellant. The financing procedures were approved by the electors.

We hold the Convention Center funding arrangement valid in all particulars except as to the retirement date of the bonds, and as to that issue the City should be authorized to conform to the twenty-year requirement.

The judgment of the trial court is affirmed and remanded for further judgment entries not inconsistent with this opinion.

All concur.